In the Matters of Tony ROPER and
Darlene Roper, Debtors.

Tony ROPER and Darlene
Roper, Plaintiffs,

v.

AMERICAN HEALTH & FIRE INSUR-
ANCE CO. & Commercial Credit
Corporation, Defendants.

Matter of Gary W. SMITH, Debtor.

Gary W. SMITH, Plaintiff,

v.

AMERICAN HEALTH & LIFE INSUR-
ANCE CO. & Commercial Credit
Corporation, Defendants.

Bankruptcy Nos. 95–40203, 95–40171.
Adversary Nos. 96–40373, 96–40372.

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

Oct. 31, 1996.

Earl Underwood, Anniston, AL, for debtors (plaintiffs) in both cases.

Nathan Norris, Birmingham, AL, for American Health and Life Insurance Company (creditor/defendant).

Stephen Porterfield, Birmingham, AL, for Commercial Credit Corporation (creditor/defendant).

Mavis Willingham, Anniston, AL, Standing Trustee in both cases.

## MEMORANDUM OPINION AND ORDER

JAMES S. SLEDGE, Bankruptcy Judge.

This matter is before the Court on a Motion to Remand filed by the plaintiffs on June 24, 1996. The District Court referred the matter to this Court on August 1, 1996. A hearing was held on September 10, 1996. Appearing at the hearing on the motion were Earl Underwood, attorney for the debtors, Nathan Norris, attorney for American Health and Life Insurance Company, Stephen Porterfied, for Commercial Credit Corp., and Mavis Willingham, Standing Trustee. The matter was taken under submission on September 18, 1996 on oral and written arguments of counsel and undisputed facts. The cases were consolidated for this opinion and taken under advisement on that date. The issues before the Court involve federal jurisdiction and bankruptcy court authority to hear and determine Motions to Remand. For the reasons discussed below, both cases are remanded to state court.

## I. FINDINGS OF FACT

A Chapter 13 plan was filed by Tony and Darlene Roper on February 23, 1995, proposing to pay one hundred percent of claims against the estate, plus eight percent interest to both secured and unsecured claims. Commercial Credit Corporation filed a secured claim of $7,980.88, with attached documents including certificate of titles on a 1980 Ford Mustang and a 1979 Chevrolet Camaro. The Ropers filed an adversary proceeding challenging the extent of the lien on the Camaro. A judgment was entered against Commercial Credit for an allowed secured claim of $2,500.00 and an allowed unsecured claim of $5,480.88. The plan provided for the Mustang to be surrendered to satisfy the claim secured by it and for payment in full plus eight interest on the claim secured by the Camaro. The secured claim is to be paid in sixteen fixed monthly payments of $160.00 and the unsecured claim is to be paid pro rata. The plan was confirmed on July 25, 1995.

Debtor Gary Smith filed his Chapter 13 petition on June 6, 1995. This plan proposed to pay one hundred percent of all claims, plus eight percent interest on secured claims, but no interest to unsecured claimants. Commercial Credit filed a secured claim for $8,192.28, with attached documents, including a security agreement in nonpurchase money personal property. However, no recorded financing statement was included. Mr.

Smith filed an adversary proceeding challenging the security interest against Commercial Credit and obtained a judgment for an allowed secured claim of zero and an allowed unsecured claim of $8,192.28. Thus, the plan provided for the full claim to be paid pro rata during the life of the plan. It was confirmed on July 20, 1995.

On May 9, 1996, these debtors filed separate actions against American Health and Insurance Company and Commercial Credit, Inc. in the Circuit Court of Calhoun County, Alabama. The actions consisted of allegations of common law charges of fraud, deceit, and misrepresentation, and violations of the Alabama Mini–Code in connection with credit insurance policies sold to the debtors by Commercial Credit as general agent for American Health and Insurance Company. The premiums for the policies were added to consumer notes signed by the debtors.

Pursuant to 28 U.S.C. §§ 1331 and 1452, defendant Commercial Credit removed both cases to the U.S. District Court of the Northern District of Alabama on June 14, 1996. As grounds for subject matter jurisdiction in federal court, the defendant contended that plaintiffs' allegations of violating disclosure requirements was not a viable cause of action under the Alabama Mini–Code, but was instead a masked attempt to try a federal claim under the Truth In Lending Act. Therefore, Commercial Credit argued that federal question jurisdiction under 28 U.S.C. § 1331 was present. The defendant also contended that federal jurisdiction existed pursuant to 28 U.S.C. § 1334, based on the pendency of the plaintiffs' respective bankruptcy cases.

Motions to Remand were filed by plaintiffs on June 24, 1996; and as support they argued that the state court was the proper forum because all claims were based upon state law. The District Court dismissed defendant's claim of jurisdiction under the Truth In Lending Act, as barred by the statute of limitations provided in 15 U.S.C. § 1640(e). All that remains as a possible basis for federal jurisdiction is the relation between the actions and the debtors' bankruptcy cases.[1] The District Court referred the "issue" to this Court for a "report and recommendation" on August 1, 1996.[2] Upon review of recent Congressional amendments to the U.S. Code, this Court respectfully declined to submit a recommendation, but instead held that it had the authority to render an Order on Motions to Remand.

## II. DISCUSSION AND CONCLUSIONS OF LAW

Every court must determine its jurisdiction or power to adjudicate an issue presented to it. A bankruptcy court, as a unit of the federal court system created by Congress pursuant to its Article I powers, must first ascertain whether it has subject matter jurisdiction over the matter before it. It must then decide whether it has the authority, as opposed to an Article III court, to render a final order on the matter. Finally, as a matter of comity and federalism, it must decide whether it should exercise its power or refrain in order to remand the matter to the state court where the action was originally filed. *Beverly Royal v. Daihatsu (In re Royal)*, 197 B.R. 341, 345 (Bankr.N.D.Ala. 1996). At the federal level, the ultimate issue is separation of powers. At the state level, the issue is sovereignty of the states.

1. Defendants do not assert subject matter jurisdiction on the basis of diversity of citizenship.

2. The district court's order stated that the "issue" was referred to bankruptcy court for a "report and recommendation." The language "report and recommendation" was present in FED.R.BANKR.P. 9027(e) prior to 1991. At that time, bankruptcy courts could not issue an order regarding a Motion to Remand, because the remand statute, 28 U.S.C. § 1452, did not provide for appellate review. As discussed further in the body of this opinion, such unchecked power by an Article I court was held to be an unconstitutional violation of the Separation of Powers Doctrine by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Following this decision, the Code was revised to provide for appellate review. The pertinent section of 28 U.S.C. § 1452(b) specifically excludes district courts from the prohibition of appellate review. Rule 9027 of the Federal Rules of Bankruptcy Procedure was also amended to delete the provision requiring a bankruptcy court to issue a report and recommendation on motions to remand.

### a. Jurisdiction

"It is well settled that the jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is limited initially by statute and eventually by Article III." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 787 (11th Cir.1990) *citing Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984). A case filed in a state court may be removed by a party to a federal court only if a statute exists that would have allowed the plaintiff to file the claim in federal court originally.[3] *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994). In the present case, removal based on federal question jurisdiction was dismissed by the district court, leaving the only possible basis for jurisdiction over this action to be its relation to the plaintiffs/debtors' pending cases in bankruptcy.

Title 28 U.S.C. Section 1452(a) provides for removal to a federal court any claim or action based on its relation to a bankruptcy case, if the district court has jurisdiction based on § 1334 of the same title. Section 1334(a) grants district courts exclusive power over bankruptcy *cases*. Section 1334(b) creates original, but not exclusive federal jurisdiction over "civil *proceedings* arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(b) (emphasis added).[4] Federal jurisdiction thus exists, at a minimum, if the proceeding filed in state court "relates to" a case under title 11. *Community Bank of Homestead v. Boone (In re Boone)*, 52 F.3d 958 (11th Cir.1995). District courts may then refer matters to bankruptcy courts for adjudication pursuant to 28 U.S.C. § 157(a). This is accomplished either by General Order of Reference, or, as in the present case, by a party's removal to the district court and its referral to the bankruptcy court.

The plaintiffs' complaints do not state a case under title 11. Only the case initiated by a petition filed in bankruptcy court for protection under title 11 qualifies as such pursuant to section 1334(a). *Thomasson v. AmSouth Bank*, 59 B.R. 997, 1004 (N.D.Ala.1986). Therefore, the matter is a proceeding and jurisdiction exists, if at all, by virtue of § 1334(b).

It is not necessary to distinguish between proceedings "arising in," "arising under," or "related to" bankruptcy cases under Title 11. Legislative History indicates that the phrases were not used to refer to different matters, but to "operate conjunctively to define the scope of jurisdiction." *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987), *citing* S.Rep. No. 989, 95th Cong., 2d Sess., 153–54 (1987); *see also In re Lemco Gypsum, Inc.*, 910 F.2d at 786. The only necessary determination is whether the proceeding is related to the bankruptcy.[5] *In re Wood*, 825 F.2d at 93.

---

**3.** The general removal statute, 28 U.S.C. § 1441(a) allows only defendants to remove an action to federal courts. However, the bankruptcy removal statute allows any party to remove. 28 U.S.C. § 1452(a).

**4.** Although the Code does not define case or proceeding, Collier's continues to use the definitions provided in former Bankruptcy Rule 101, and states that there is "little doubt" that it established the terms' meanings. *Collier on Bankruptcy* § 301.03 (15th ed. 1995). "Case" refers to the entire legal action in bankruptcy. "The term embraces all controversies determinable by the court of bankruptcy and all the matters of administration arising during the pendency of the case." A "proceeding" refers to "a litigated matter arising within a case during the course of administration of an estate." Proceedings are "subactions raised or commenced within the case, including motions or adversary proceedings, which may raise a dispute or litigated matter." *Id.* That these definitions also apply to 28 U.S.C. § 157, defining the authority of a bankruptcy judge, is supported by its language. Subsection 157(b)(1) states "(b)ankruptcy judges may hear and determine all cases *under* title 11 and all *core proceedings arising under* title 11." (emphasis added). A Motion to Remand, therefore, is a proceeding which the district court may refer to the bankruptcy court if it arises under, arises in, or relates to, a case in title 11. In other words, if the district court has subject matter jurisdiction over the proceeding, it may refer it to the bankruptcy court.

**5.** Even if the court were to define the terms separately, jurisdiction in the present case exists only if the removed action is sufficiently related to the bankruptcy. A matter "arising under" refers to a cause of action created by Title 11. A matter "arising in" refers to purely administrative matters that have no existence outside the bankruptcy proceeding. A cause of action strict-

The Eleventh Circuit adopted the standard developed by the Third Circuit to determine if there exists a sufficient relationship between the removed cause of action and the bankruptcy case to establish federal jurisdiction. *In re Lemco Gypsum, Inc.*, *supra* at 788, *citing Pacor, Inc. v. Higgins*, 743 F.2d at 994.

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. *An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedoms of action (either positively or negatively) and which in any way impacts upon the handling an administration of the bankruptcy estate. See Id.* at 994 (emphasis added).

Although not an exclusive checklist, the Eleventh Circuit articulated considerations of import. *Id.* at 788–89. They include: (1) evaluate the connection between the parties in the proceeding and the parties to the bankruptcy; (2) determine if proceeds of the litigation, if any, could be turned over to the trustee for distribution to creditors; (3) consider whether the dispute involves property in which the debtor has or might have an interest; and (4) consider the affect the litigation might have on creditors of the debtor.

In the cases at bar, there is a connection between the parties to the litigation and the debtors' respective bankruptcies. Plaintiffs in the proceedings are debtors in bankruptcy; one of the defendants, Commercial Credit, is a scheduled creditor in both bankruptcies and the confirmed plans provide for payment to Commercial Credit on its' claims. American Health & Insurance Company is the underwriter and Commercial Credit the general agent for insurance policies attached to the note upon which the dispute arises. This connection alone, however, cannot support jurisdiction. As the Supreme Court stated in *Celotex Corp. v. Edwards*, —— U.S. ——, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), "whatever test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Id.* at n. 6. The Eleventh Circuit has interpreted "effect on the debtor" to mean that the action must affect the estate of the debtor, not just the debtor. *In re Boone*, 52 F.3d at 961 *citing In re Wood*, 825 F.2d at 93.[6]

The Court next looks to see if parties in interest could compel plaintiffs to turnover any proceeds of the litigation to fund their bankruptcy plan. Both debtors in the present case filed Chapter 13 reorganization plans providing for allowed claims to be paid one hundred percent. However, a seemingly minor difference between the two confirmed plans results in federal jurisdiction in one case and not the other. The Roper plan provides for eight percent interest to both secured and unsecured claimants, in addition to paying the claims in full. The Smith case, on the other hand, provides for one hundred percent payment of all allowed claims, together with eight percent interest on secured claims; *however*, no interest is allocated to unsecured claim holders. Should Mr. Smith ultimately prevail in the proceeding, there would be an effect on him as a debtor. Creditors could compel application of the proceeds to allow for interest distributions to them and/or shorten the term of the plan pursuant to the bankruptcy modification provision, 11 U.S.C. § 1329(a). Should the Ropers prevail, however, there is no possible benefit because all claimants are to receive

ly based upon state law claims can neither arise under or arise in a case under Title 11. It can only be related to the bankruptcy case.

**6.** The cause of action at issue in *Boone* was a tortious interference suit. In that case, the Eleventh Circuit clarified jurisdictional issues as follows: "As we observed in *Lemco*, judicial economy itself does not justify jurisdiction. Second, the mere fact that the Boones are both debtors and plaintiffs does not give rise to bankruptcy jurisdiction over their claim. Because the outcome of their tortious interference suit has no conceivable effect on the estate or the administration of it, the Boones are, in a sense, not acting as debtors. The role of debtor is defined by the panoply of rights and duties arising from the petition in bankruptcy; the outcome of the tortious interference claim will not alter those rights and duties in any way." *Id.* at 961.

the present value of their entire claims by providing eight percent interest. Creditors would not be entitled to additional proceeds on their claims, nor would they be harmed by a delay in payment. Furthermore, defendants have failed to show any other possible effect the cause of action would have on the bankruptcy plans. "The burden of establishing federal jurisdiction is on the party or parties seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Tapscott v. MS Dealer Service Corp.* 77 F.3d 1353, 1356 (11th Cir.1996).

■ Defendants' argument that proceeds of the litigation could be turned over to the trustee for distribution to creditors would be compelling if these plans had not yet been confirmed. The interim period between the filing of a bankruptcy petition and confirmation of a debtor's plan is used to complete the claims allowance process. *In re Duke,* 153 B.R. 913, 916 (Bankr.N.D.Ala.1993). It is during that time that creditors have an opportunity to object based upon the debtors' proposed treatment of their claims, and debtors may contest the claims filed by the creditors. At confirmation, the rights, duties and relationships of the parties become fixed. 11 U.S.C. § 1327. "A confirmed Chapter 13 plan is res judicata as to all parties who participate in the confirmation process." *In re Duke,* 153 B.R. at 916 *citing Sun Finance Co. v. Howard (In re Howard),* 972 F.2d 639, 641 (5th Cir.1992); *See also In re Penrod,* 50 F.3d 459 (7th Cir.1995).

■ Additionally, all causes of action in which a debtor may have an interest become property of the estate at the time of filing. *Chappel v. Proctor (In re Chappel),* 189 B.R. 489, 492 (Bankr. 9th Cir.1995). Confirmation vests the property of the estate in the trustee, and, in this district, remains so vested until the plan is dismissed or discharged.[7] Proceeds from the litigation, therefore, are to be turned over to the trustee for distribution, *but* claims continue to be paid in accordance with the confirmed plan,

absent grounds for modification. An award of damages to the plaintiff is an asset of the estate, not a claim against the estate. *See Coleman v. First Family Fin. Serv., Inc.,* 200 B.R. 403 (Bankr.S.D.Ala.1996). "Therefore, whether damages are awarded or not will not impact the claim the Defendants have in these cases." *Id.*

Applying the above analysis, the claimants in the Roper case could not modify the plan to benefit from any proceeds, but claimants in the Smith case may modify. There being no effect on the debtor or possible benefit to any creditors, this Court finds that subject matter jurisdiction does not exist in the Roper proceeding and remands it to the Circuit Court for Calhoun County, Alabama. *St. Vincent's Hospital v. Norrell (In re Norrell),* 198 B.R. 987, 993 (Bankr.N.D.Ala.1996) (if a "retroactive determination" indicates that the cause of action was not subject to removal under 28 U.S.C. 1452(a), the action is remanded to its original court); *see also McCray v. Life of the South Ins. Co.,* Chapter 13 Case No. 95–00056, Adv. No. RRS–13, slip op. at 2, 1995 WL 819000 (M.D.Ala. July 18, 1996). This Court also holds that federal jurisdiction exists in the Smith case because the cause of action is sufficiently related to the debtor's bankruptcy case.

However, because the holding that applies to the Roper case conflicts with Chief Judge Mitchell's decision in *In re Royal,* 197 B.R. 341 (Bankr.N.D.Ala.1996), the reason for such departure will be addressed. The action before this Court and the one before Chief Judge Mitchell are not factually distinguishable. In *Royal,* a Chapter 13 debtor brought a postconfirmation state court action against a creditor asserting Alabama Mini–Code violations and common law fraud, etc. *In re Royal* 197 B.R. at 345. Chief Judge Mitchell found three bases for federal jurisdiction. They are: (1) plaintiff was a debtor and defendant a creditor in a pending Chapter 13 plan; (2) the same transaction which gave rise to the allowed claim of the defendant in the debtor's plan was the subject of

7. 11 U.S.C. § 1327(b) allows the bankruptcy court to determine when the property shall revest in the debtor. It states: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." The Orders in the present cases state, "(t)he property of the estate shall not vest in the debtor(s) until a discharge is granted under Chapter 13 or this case is dismissed out of Court."

the complaint; and (3) the resolution of the dispute between the debtor and creditor "could ultimately be res judicata as to a future objection by (the debtor) to the claim of (the creditor)." *Id.* at 349.

The relationship between the plaintiff and defendant as debtor and creditor, and the fact that the dispute involves a claim filed by the creditor, are too tenuous to confer jurisdiction. Relationships standing alone do not affect the bankruptcy estate, nor does it alter the rights and duties of the plaintiff as a debtor. The third factor, in this Court's opinion, cannot give rise to jurisdiction either. Res judicata acts *now* to bar any objections by plaintiff to a claim of the creditor, not at a later time. A Court cannot subsequently address arguments that would or could have been made at the time of confirmation. *See In re Haynes,* 107 B.R. 83 (Bankr.E.D.Va.1989); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987). There being no effect on the debtor and the debtor's estate by the presence of these three factors, this Court respectfully declines to follow Chief Judge Mitchell's analysis. "A controversy, the resolution of which may have only speculative, indirect or incidental effects on the bankruptcy estate, is unrelated to the bankruptcy action and not one over which the bankruptcy court can exercise jurisdiction." *Dean v. American General Finance, Inc.,* 191 B.R. 463 (M.D.Ala.1996).[8]

The present case may be distinguished from Judge Cohen's holding in *In re Norrell,* 198 B.R. 987, 991 (Bankr.N.D.Ala.1996), even though the result in both cases, to remand to state court, is the same. In *Norrell,* subject matter jurisdiction existed, first, because the debtor's plan had yet to be confirmed. Prior to confirmation, the rights, duties, and relationships of the parties have not become fixed. *In re Duke, supra* at 916. Second, the dispute between the parties involved the allowance or disallowance of a creditor's claim against the estate and debtor's counterclaim. *In re Norrell,* 198 B.R. at 991. Congress has specifically provided the authority for bankruptcy courts to hear and determine these "core" proceedings in 28 U.S.C. § 157(b)(2)(C).

**b. Authority**

Although subject matter jurisdiction exists in a federal court, the limited jurisdiction of a bankruptcy court requires it to determine whether Congress also granted it the authority to enter a final order or limited the bankruptcy court to recommending a course of action to the district court for a final determination. Section 157 of Title 28 contains a non-exclusive list of matters that constitute core proceedings in which bankruptcy judges may enter an order, subject to appellate review. Two issues present in this case are not directly addressed by the Code. First, is a Motion to Remand a core proceeding; and second, when federal jurisdiction is established solely because an action is "related to" a case in bankruptcy, may the bankruptcy court issue an order? After analyzing relevant case law, Code sections, and Federal Rules of Bankruptcy Procedure, this Court is satisfied that a Motion to Remand, in and of itself, is "core" within the meaning of 28 U.S.C. § 157; and also that it has the authority to enter an order on the matter pursuant to 28 U.S.C. §§ 157 and 1452.

To reach this conclusion, analysis begins with the Code prior the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Congress specifically designed 28 U.S.C. § 1471 to provide for removal of proceedings connected with bankruptcy cases. *Textron Investment Mgt. Co. v. Struthers Thermo–Flood Corp.,* 169 B.R. 206 (D.Kan. 1994). The statute granted to the bankruptcy court the same jurisdiction over bankruptcy cases as possessed by the district court under § 1478 of the same title. 28 U.S.C. § 1471(c) (repealed). By plurality opinion, the Supreme Court held that this broad grant of jurisdiction was unconstitutional. *Marathon,* 458 U.S. at 87, 102 S.Ct. at 2880. Article III, the Court reasoned, prohibited Congress from vesting judicial powers too far

---

**8.** The operative difference is the impact of 11 U.S.C. § 1327 versus § 502(j). *See In re Duke,* 153 B.R. 913 (Bankr.N.D.Ala.1993); *In re Royal,* *supra* at n. 14; *In re Clark,* 172 B.R. 701 (Bankr. S.D.Ga.1994).

removed from the "core" of traditional bankruptcy powers in Article I judges. *Id.* at 76, 102 S.Ct. at 2874. To satisfy any separation of powers problem between Article I and Article III judges, the Court outlined two fundamental principles. First, when Congress creates a substantive federal right, which the Court referred to as a "public right," it possesses substantial discretion to prescribe the manner in which that right may be adjudicated. However, under the second principle, this discretion is limited so that the "essential attributes of judicial power are retained in an Article III judge." *Id.* at 71, 102 S.Ct. at 2871–72. Read together, Congress may create a public right, such as the right to seek bankruptcy protection under title 11, provided that the ultimate power of adjudication over such matters remains with Article III courts. "Private rights," on the other hand, defined by the Court as those rights created by states or grounded in common law, may only be heard and determined by Article III judges. *Id.* at 67–91, 102 S.Ct. at 2869–82.[9]

Congress responded with the Bankruptcy Amendments and Federal Judgeship Act of 1984.[10] The most significant changes are encompassed in 28 U.S.C. §§ 157 and 1334. The Act altered the structure of the bankruptcy court system by establishing bankruptcy courts as units of the district courts to which a district court may refer any and all cases and proceedings over which it has jurisdiction under § 1334. 28 U.S.C. § 151.[11] The district court may revoke this reference on its own motion or on timely motion of any party, to prevent a matter concerning private rights from being adjudicated by an Article I court. 28 U.S.C. § 157(d); *In re Royal,* 197 B.R. at 348. Thus, the district court retains complete control over all actions a bankruptcy court may hear.

▮ Furthermore, the Code separated matters into "core" and "non-core," reflecting the language used by the Supreme Court to differentiate between issues upon which a bankruptcy judge may enter an order, subject to appellate review, and ones which must be referred to the district court for final disposition. 28 U.S.C. § 157. "Core proceedings" comprise matters a bankruptcy court may rule on. *Id.* at 347. If the matter is "non-core," a bankruptcy judge may hear it, but is limited to submitting proposed findings of fact and conclusions of law to the district court, unless all parties consent. 28 U.S.C. § 157(c)(1).

Congress made no changes to the bankruptcy removal statute to conform with *Marathon* until 1990. In the interim, bankruptcy courts appeared confused over their authority to render orders on Motions to Remand. As written, 28 U.S.C. § 1452 created the rights of parties to remove a matter to bankruptcy court and the authority for the bankruptcy court to remand proceedings back to state court on "any equitable grounds." This statutory grant of authority for parties to remove and/or seek remand constituted "public rights." However, § 1452(b) stated that a decision to retain rather than remand the proceeding was "not reviewable by appeal or otherwise." With no appellate review available by an Article III judge, many courts ruled that they were limited to proposals on disposition. *Thomasson v. AmSouth Bank,* 59 B.R. 997, 1008 (N.D.Ala. 1986) ("Only an Article III court can enter such a non-reviewable order").

Despite the clear language of § 1452(b), other courts reasoned that "because the district court had original jurisdiction over the matter removed from state court, its review of the bankruptcy court's remand was not actually an appeal." Rather, "it was more in the nature of a review of a recommendation made by the bankruptcy judge." *Boone Coal and Timber Co. v. Polan,* 787 F.2d 1056, 1059 (6th Cir.1986). By interpreting the matter in this light, it appears Courts were attempting to avoid any Article III problems. *Bank of*

---

**9.** *See also Royal v. Daihatsu (In re Royal),* 197 B.R. at 346–48 for an in-depth review of "public" v. "private rights."

**10.** The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, Title I, s 101(a), 98 Stat. 333 (1984).

**11.** Section 151 provides that "the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district."

*New England v. Hanson Industries, Inc. (In re Hanson Industries, Inc.),* 83 B.R. 659, 667 (Bankr.D.Minn.1988). Still other courts found authority to issue orders on remand motions by characterizing them as purely procedural, and thus outside of the type of proceeding the Supreme Court was concerned with in Marathon. *Hanson,* 83 B.R. at 664. "Not only is a motion for remand not an adjudication on the merits, it is based on federal not state law. As a result, nothing in § 157 or the Supreme Court's decision in Marathon prohibit the district court from referring remand motions to the bankruptcy court for final determination." *Id.*

The court in *Hanson* went even further to rule that the United States Supreme Court had exceeded its authority under the Separation of Powers Doctrine by promulgating a bankruptcy rule requiring federal district courts to enter remand orders. *Id.* at 665. The Rule in question, 9027(e), at that time limited bankruptcy courts to issue a "record and recommendation" to district judges. This was done, stated the court, in order to avoid a constitutional challenge to the nonappealability of remand orders of the bankruptcy court. *Id.* Because the rule amended Congress' grant of power to the district court under §§ 1334 and 157, it was outside of the Court's authority.[12] "The United States Supreme Court may not prescribe rules which alter the judicial powers of the lower federal courts. That power is reserved exclusively to Congress." *Id.* at 669. Finally, a few courts determined that a remand, removal, or transfer of venue motion was "core" based upon § 157(b)(2)(A) and (O), as matters concerning the administration of the estate.[13] *See Coleman v. First Family Financial Services, Inc.,* 200 B.R. 403 (Bankr.S.D.Ala. 1996).

Section 309(c) of the Judicial Improvements Act of 1990 resolved this issue by providing for review of a decision on a remand motion. 28 U.S.C. § 1452(b) now reads, "(a)n order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals ... or by the Supreme Court of the United States." The district court was explicitly excluded to provide for review of remand decisions by bankruptcy courts. The accompanying Congressional Record stated,

> Section 309 would amend ... U.S.C. 1452(b) to clarify that, with respect to certain determinations in bankruptcy cases, they forbid only appeals from the district courts to the courts of appeals, not from bankruptcy courts to the district courts ... Such determinations would therefore by (sic) reviewable by the district court. 136 Cong.Rec. S17580 (daily ed. Oct. 27, 1990).

Correspondingly, the language in Bankruptcy Rule 9027(e) requiring a "record and recommendation" be submitted by the bankruptcy court to the district court was deleted.

> Subdivision (e), redesignated as subdivision (d), is amended to delete the restriction that limits the role of the bankruptcy court to the filing of a report and recommendation for disposition of a motion for remand under 28 U.S.C. § 1452(b). This amendment allows an appeal to the district court of a bankruptcy court's order determining a motion for remand.[14]

With these changes, a Motion to Remand became a "core" proceeding. "Construing 1452(b) as allowing a review by the district court resolves any constitutional problems, and relieves the district courts from the onerous task of reviewing recommendations of

---

**12.** The Court in Hanson stated that 28 U.S.C. § 2075, which grants the U.S. Supreme Court with the power to promulgate bankruptcy rules, authorized the Court to prescribe rules dealing with forms, practice, and procedure only. *Id.* at 667. "Any rule," stated the Hanson Court, "which extends beyond the scope of § 2075 is invalid." *Id.* The pertinent section of that statute states: "The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11."

**13.** Subsection (A) lists as "matters concerning the administration of the estate" as core. Subsection (O) includes as core "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship, except personal injury tort or wrongful death claims."

**14.** Advisory Committee Note 1991, *Norton Bankr. Law and Practice 2d,* 677–78 (1995–96 Ed.).

the bankruptcy court." *In re Hanson Industries, Inc., supra* at 667.

██ There remains one more hurdle in the analysis. Despite a Motion to Remand being a "core" proceeding, 157(b)(1) provides that "(b)ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a cause under title 11." Absent from this explicit grant is the authority of a bankruptcy court to hear and determine a core proceeding, such as a Motion to Remand, when jurisdiction arises solely because the underlying cause of action "relates to" the bankruptcy case. The conclusion that this power exists requires that 28 U.S.C. § 157 be read and considered together with 28 U.S.C. § 1452.

Although § 157 sets forth explicit powers of bankruptcy courts, it does not limit the bankruptcy courts to that authority. The statute states that a bankruptcy court "may hear and determine;" as opposed to "may *only* hear and determine." Additionally, when this provision is considered along with the bankruptcy removal statute, also of Title 28, it is clear that the two complement, not contradict one another. "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Removal from a state court may be made to the district court or directly to the bankruptcy court. "Bankruptcy judges, as judicial officers of the district court, exercise the authority of the district court to the extent it is referred to them, subject, of course to the limitations of § 157." *In re Hanson Industries, Inc.,* 83 B.R. at 665; *see also In re Norrell, supra* at n. 3, stating, "where all bankruptcy matters are referred by the district court to the bankruptcy court by a general order of reference ... removal applications are properly filed in the bankruptcy court;" *In re McGinnis,* 155 B.R. 294 (Bankr. D.N.H.1993) (holding that authority flows to the bankruptcy courts from the district courts by order of general reference).[15] Congress has thus provided bankruptcy courts with the authority to enter an order regarding a Motion to Remand, subject to appellate review.

### c. Motion to Remand

██ The present case involves a suit filed in the Calhoun County District Court of Alabama by plaintiff against defendants alleging common law fraud, deceit, and misrepresentation in connection with credit insurance policies sold to the debtor and added to a consumer note held by Commercial Credit. Plaintiff also accuses the defendants of Alabama Mini–Code violations. Although all counts rely purely on state law, defendants argue that equity does not support remand.

Title 28 U.S.C. § 1452(b) gives this Court the discretion to remand "on any equitable grounds." This district has adopted the test articulated in *Thomasson v. AmSouth Bank,* 59 B.R. 997, 1009 (N.D.Ala.1986), *citing Browning v. Navarro,* 743 F.2d 1069 (5th Cir.1984), to determine if an action should be remanded. According to the test, "any equitable grounds" sufficient for removal might include: (1) forum non conveniens; (2) the entire action of a bifurcated matter should be tried in the same court; (3) a state court is better able to resolve state law questions; (4) expertise of a particular court; (5) judicial economy; (6) prejudice to the involuntarily removed party; (7) comity; and (8) the lessened possibility of an inconsistent result. *Id.* at n. 9. Although abstention does not apply to a properly removed case, many courts consult the three requirements for mandatory abstention provided by 28 U.S.C. 1334(c)(2), as the Congressional guideline.[16] *Thomasson,* 59 B.R. at 1009; *Beverly Royal*

---

**15.** The District Court for the Northern District of Alabama has referred all cases, matters and proceeding in cases under title 11 of the Bankruptcy Code to the bankruptcy judges for this district by the General Order of Reference Dated July 16, 1984, amended July 17, 1994. Additionally, defendants originally removed the case at bar to the district court on June 14, 1996. It was referred to this Court by the District Court on August 1, 1996.

**16.** Once removed, a case is no longer pending in state court, therefore, there is nothing to abstain from. As a bankruptcy judge recently stated, "(i)f this Court were to abstain, nothing would happen because there is only one lawsuit." *In re Duval County Ranch Co.,* 167 B.R. 848 (Bankr. S.D.Tex.1994).

*v. Daihatsu,* 197 B.R. 341 (Bankr.N.D.Ala. 1996); *Coleman v. First Family Financial Serv., Inc.,* 200 B.R. 403 (Bankr.S.D.Ala. 1996); *Cook v. Griffin,* 102 B.R. 875, 877 (N.D.Ga.1989). These factors are: (1) the proceeding is based on a state law claim which, although related to a title 11 case, does not arise under title 11 or out of a title 11 case; (2) the proceeding could not have been commenced in federal court but for the bankruptcy; and (3) the state court can timely adjudicate the cause of action. 28 U.S.C. § 1334(c)(2).

Equitable factors (1), (2), and (8) are not relevant to the present case, and will be disposed of first. The bankruptcy court and state court are located within the same city, so forum non conveniens is not a factor. The entire matter having been removed to this court and no motion for separate trials for co-defendants filed, bifurcation is not an issue. Nor is there any reason to believe that an inconsistent result will be obtained if either a federal or state court decide the case.

■ Defendants argue that factors (3) and (4) weigh in favor of retaining jurisdiction because "the claims of these Plaintiffs do not involve law which is unsettled in Alabama or that would be difficult for this Court to interpret and apply." Defendant's brief at 6. Defendants cite *In re Butcher,* 46 B.R. 109, 114 (Bankr.N.D.Ga.1985), in which the Court held that a remand argument based on a state court's ability or expertise holds no weight unless the dispute involves an unsettled question of state law. This Court agrees with defendants that a bankruptcy court is "more than qualified to apply the laws of the State of Alabama." Defendant's brief at 6. However, state courts routinely hear matters involving state law and, therefore, are in the best posture to provide a prompt resolution of those issues. *In re Norrell,* 198 B.R. at 995.

Defendants also assert that remand will result in a waste of judicial resources for two reasons. Defendant's brief at 7. First, the matter was removed from the state court before significant activity had taken place there. Second, remand will result in duplication of resources because any recoveries from the suit will re-invoke federal jurisdic-

tion in order to administer new assets of the estate. This Court agrees that this factor weighs in favor of the bankruptcy court retaining jurisdiction.

However, there is a potential for prejudice against the involuntarily removed plaintiff based upon his request for a jury trial. Although permitted in bankruptcy courts, all parties must first consent. 28 U.S.C. § 157(e). In the present case, there is no such agreement. Additionally, the Court is mindful of the Eleventh Circuit's instruction when removal/remand is at issue. "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing ... where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) *citing Boyer v. Snap-on Tools Corp.,* 913 F.2d 108 (3rd Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991).

Analysis under the final factor, or comity for state courts, should be considered along with the mandatory abstention factor requiring remand when the only basis for federal jurisdiction is bankruptcy. 28 U.S.C. § 1334(c)(2). "Section 1334(c) expresses a strong congressional desire that in respect to non-core proceedings the federal courts should not rush to usurp the traditional precincts of the state courts." *In re Norrell, supra* at 997, *citing Cook v. Griffin,* 102 B.R. at 877. This Congressional purpose carries great weight in favor of remand. The remaining factors provided by the mandatory abstention statute further tip the scales toward remand. This proceeding would not be in federal court but for the bankruptcy case and defendants have introduced no evidence indicating that the state court cannot timely adjudicate the claim. Therefore, this Court orders that the plaintiff/debtor's action based solely upon state law claims be remanded to the state court for final disposition.

### d. Additional Arguments by Defendant

Two interesting arguments asserted by defendants go to the merits of the case rather than the issue before the court; and, conse-

quently, should be presented to the trial court. This Court does not want to conclude this Opinion, however, without pointing out that these arguments have merit. Defendants first assert that plaintiffs/debtors lack standing to prosecute their claims because they failed to join the bankruptcy trustee as co-plaintiff, or request that the trustee file suit for them.[17] Defendant's brief at 12. 11 U.S.C. § 323(a) makes the trustee the representative of the estate and section (b) grants the trustee with the capacity to sue or be sued. 11 U.S.C. § 323. Therefore, defendants argue that when the debtor sought bankruptcy protection, he relinquished the capacity to sue or be sued to the trustee. Defendants also argue that the order confirming the debtor's Chapter 13 plan serves as *res judicata*, or more specifically, claim preclusion, as to any causes of action this debtor filed but failed to disclose in his plan prior to confirmation or to the bankruptcy court post-confirmation. Again, this argument is persuasive, but because it does not provide grounds for consideration of remand motions, it should be presented to the trial court ruling on the merits.

Thus, the Court finds that it lacks subject matter jurisdiction over the Ropers' cause of action and ORDERS it remanded to the Circuit Court of Calhoun County for disposition. The Court finds that it has jurisdiction over the Smith cause of action, but based upon good cause, ORDERS that it also be remanded to the Circuit Court of Calhoun County for disposition.

---

**17.** It is unclear whether defendants assert that the trustee must be joined in the state court case, or whether the trustee alone has the ability to sue and be sued.